| | | |
|---|---|---|
| LINDA WELLS, as next friend and mother of | ) | |
| O.G.W., L.K.W., and G.S.W., minor children | ) | |
| of and heirs at law of JAMES F. WALL, II, | ) | |
| deceased; | ) | |
| | ) | |
|      Plaintiffs, | ) | Case No. 3:13-0194 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| SUNBELT RENTALS, INC., MULTIQUIP, INC., | ) | |
| and DENYO CO., LTD., | ) | |
| | ) | |
|      Defendants. | ) | |

| | | |
|---|---|---|
| EDDIE K. WATSON, et al., | ) | |
| | ) | |
|      Plaintiffs, | ) | Case No. 3:13-0195 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| SUNBELT RENTALS, INC., MULTIQUIP, INC., | ) | |
| and DENYO CO., LTD., | ) | |
| | ) | |
|      Defendants. | ) | |

| | | |
|---|---|---|
| IN RE: ESTATE OF JONATHAN OVER, | ) | |
| by his parents, MICHAEL OVER and | ) | |
| BRENDA OVER, for the benefit of his minor | ) | |
| children, C.M.O. and J.K.O, and MICHAEL OVER | ) | |
| and BRENDA OVER, individually, | ) | |
| | ) | |
|      Plaintiffs, | ) | Case No. 3:13-0196 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| SUNBELT RENTALS, INC., and MULTIQUIP, INC., | ) | |
| | ) | |
|      Defendants. | ) | |

| | | |
|---|---|---|
| **EDDIE K. WATSON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:13-0410** |
| | ) | **Judge Trauger** |
| **v.** | ) | |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

| | | |
|---|---|---|
| **LINDA WELLS, as next friend and mother of** | ) | |
| **O.G.W., L.K.W., and G.S.W., minor children** | ) | |
| **of and heirs at law of JAMES F. WALL, II,** | ) | |
| **deceased;** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:13-0693** |
| | ) | **Judge Trauger** |
| **v.** | ) | |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

| | | |
|---|---|---|
| **IN RE: ESTATE OF TIMOTHY STONE,** | ) | |
| **by his son, TYLER STONE, and TYLER STONE** | ) | |
| **individually, and for the benefit of his minor child,** | ) | |
| **C.S., and LOGAN STONE, individually, and** | ) | |
| **BUFORD STONE, individually;** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:13-0756** |
| | ) | **Judge Trauger** |
| **v.** | ) | |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

MICHAEL OVER, administrator of the estate       )
of Jonathan Over; C.M.O., by his co-guardian and )
next friend, MICHAEL OVER; J.K.O., by his        )
co-guardian and next friend MICHAEL OVER;        )
MICHAEL OVER and BRENDA OVER, individually,      )
                                                 )
     Plaintiffs,        )     **Case No. 3:13-0757**
                                                 )     **Judge Trauger**
**v.**                                           )
                                                 )
**UNITED STATES,**                               )
                                                 )
     **Defendant.**       )

## MEMORANDUM

Pending before the court is a Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 53) filed by defendant Denyo Co., Ltd. ("Denyo"), to which two sets of plaintiffs, Linda Wells, and Eddie and Christine Watson, have filed separate Responses in opposition (Docket Nos. 81-82), and Denyo has filed a Reply (Docket No. 83). Wells also filed, with the court's permission, a Supplemental Memorandum of Law in opposition to Denyo's motion (Docket Nos. 86-87). For the reasons discussed herein, Denyo's motion will be granted.

## BACKGROUND

**I.**    <u>Overview</u>

On August 5, 2013, this court ordered the consolidation of seven individual actions for all purposes, including trial.[1] (Docket No. 36.) In sum, the seven actions involve four sets of plaintiffs. The actions are the result of the tragic deaths of four individuals: James F. Wall, II;

---

[1] The actions have been consolidated under a single case number: Case No. 3:13-cv-0194. For ease of reference, when citing to the docket of the consolidated case number, the court will not indicate the case number. When referring to the dockets of the other six actions, the court will cite to the record by indicating the case number and then the number of the filing on the docket.

Kathryn Watson Over, Jonathan Over, and Timothy Stone (together, "the Decedents").[2] The seven original actions were filed by the decedents' families and heirs and include two lawsuits filed by plaintiff Linda Wells (Case Nos. 3:13-cv-0194; 3:13-cv-0693); two lawsuits filed by plaintiffs Eddie K. Watson and his wife, Christine Watson (Case Nos. 3:13-cv-0195; 3:13-cv-0410); two lawsuits filed by Michael Over and his wife, Brenda Over (Case Nos. 3:13-cv-0196; 3:13-cv-0757);[3] and one lawsuit filed by Tyler Stone, Buford Stone, and Logan Stone (Case No. 3:13-cv-0756). All of the actions assert wrongful death claims brought on behalf of minor children of the deceased, and some include loss of consortium claims asserted by adult relations seeking redress as individuals.[4]

---

[2] Another individual, Allison Bagwell-Wyatt, died on the same night as the Decedents and in the same manner. In this consolidated action, no claims have been asserted related to her death.

[3] The court notes that, in some captions included on the Overs' filings against the United States (and subsequent filings from the other parties), the Overs appear to mistakenly include Eddie K. Watson as co-guardian and next friend of their minor grandchildren, C.M.O. and J.K.O. (*See, e.g.*, Docket No. 88 (filed by the Watsons); Case No. 3:13-cv-0757, Docket No. 1 (filed by the Overs).) Although Eddie Watson is a maternal grandparent to the same children, the court presumes that the Overs intended to plead, on behalf of their grandchildren, loss of consortium claims for the death of the children's father (as the Watsons have done in their own pleadings for loss of consortium following the death of the children's mother). Accordingly, the court has corrected this error in the caption to this Memorandum. Should the parties wish to further correct the case caption, they may file a stipulation reflecting the appropriate caption.

[4] Wells has filed suit on behalf of her children, O.G.W., L.K.W., and G.S.W., who are the minor children and heirs at law of James F. Wall, II. The Watsons have filed suit individually and on behalf of their grandchildren, C.M.O. and J.K.O., the minor children and heirs to Kathryn Watson Over. The Overs have filed suit individually and on behalf of their grandchildren, C.M.O. and J.K.O., the minor children of Jonathan Over (and also the children of Kathryn Over and grandchildren of the Watsons). Tyler Stone, Buford Stone, and Logan Stone have filed suit as individuals, and Tyler Stone has also filed claims on behalf of C.S., his minor brother and son of his father, decedent Timothy Stone.

Four defendants are present in this case. The first three defendants are companies involved in the design, manufacturing, or rental of portable generator machines: Sunbelt Rentals, Inc. ("Sunbelt"), Multiquip, Inc. ("Multiquip"), and Denyo (together, the "Generator Defendants"). The fourth defendant is the United States.

The instant motion relates to claims filed against Denyo by two[5] sets of plaintiffs: Wells and the Watsons.[6] Denyo is a Japanese corporation with its principal place of business in Tokyo, Japan. Denyo claims that there is no basis for asserting personal jurisdiction over it in Tennessee because Denyo does not do business in Tennessee; the plaintiffs' actions do not arise from any activities of Denyo in Tennessee, and Denyo does not have systematic and continuous contacts with Tennessee that justify the assertion of personal jurisdiction.

---

[5] In her Supplemental Response in Opposition to the defendant's Motion to Dismiss, plaintiff Wells improperly indicates in a caption that the Overs have joined the Watsons and Wells in filing suit against Denyo. Upon review of the docket, Wells' caption is inaccurate. The Overs originally filed suit against Sunbelt in state court on September 11, 2012, and filed a First Amended Complaint on September 17, 2012. After Sunbelt filed an Answer raising the comparative default of Multiquip as a defense, the Overs filed a Second Amended Complaint, adding Multiquip as a defendant. (Case No. 3:13-cv-0196, Docket Nos. 1, 26 (discussing chronology of filings).) In their Answers to the Second Amended Complaint, both Sunbelt and Multiquip asserted the comparative fault of Denyo as a defense. (*Id.* Docket Nos. 17-18.) Two months after the Answers were filed, on June 25, 2013, the Overs sought leave from this court to amend their Second Amended Complaint to assert claims against Denyo. (*Id.* Docket No. 26.) The court granted the Overs leave to amend on June 26, 2013. (*Id.* Docket No. 27.) However, the Overs never filed a Third Amended Complaint, and instead, in a proposed case management order filed with the court on August 1, 2013, the Overs submitted that they believe that this court lacks personal jurisdiction over Denyo. (*Id.* Docket No. 29.) Four days later, the Overs' action against Sunbelt and Multiquip was consolidated with the actions filed by the Watsons, Wells, and the Stones. Since then, the Overs have not filed claims against Denyo. Accordingly, the court's analysis is limited to the claims against Denyo filed by the Watsons and Wells.

[6] Going forward, for ease of reference and for purposes of this Memorandum only, the court will use the term "the plaintiffs" to refer to Wells and the Watsons alone, as they are the only parties who have filed claims against Denyo and oppose Denyo's motion to dismiss.

In response, the plaintiffs assert that Denyo, a manufacturing company, is subject to the court's jurisdiction because it is an "active market participant" in Tennessee and because Denyo's agreement with Multiquip required that Denyo participate in the distribution process to the extent that it purposefully availed itself of acting in Tennessee.

## II.   Underlying Facts Related to the Plaintiffs' Claims[7]

In September 2011, the Decedents attended a charity biking event at the Clarksville Speedway in Clarksville, Tennessee.

On or about September 15, 2011, James F. Wall II, who was friends with Kathryn and Jonathan Over, leased at least one gasoline-powered portable electric generator (the "Generator") from a rental store owned and operated by defendant Sunbelt in Clarksville, Tennessee.[8] The

---

[7] Unless otherwise indicated, the facts have been drawn from Wells' Second Amended Complaint against the Generator Defendants (Case No. 3:13-cv-0194, Docket No. 29) and the Watsons' Third Amended Complaint against the Generator Defendants (Case No. 3:13-cv-0195, Docket No. 30). For all relevant purposes as to the instant motion, the two complaints are so similar as to not require distinction; however, there are minor differences between the two pleadings. Facts have also been drawn from the Affidavit of Yasuo Mizuno ("Mizuno Aff.") and its related exhibits (Docket No. 55, Ex. 1), and the exhibits submitted by the Watsons in support of their Response in opposition to the defendant's motion (Docket No. 81, Exs. 1-6). The court notes that additional pleadings in the record, though not relevant to the jurisdictional matter to be resolved here, provide context as to the background facts underlying the plaintiffs' claims. *See* the Overs' First Amended Complaint against Sunbelt and Multiquip (Case No. 3:13-cv-0196, Docket No. 1, Ex. 1); the Watsons' Complaint against the United States (Case No. 3:13-cv-0410, Docket No. 1); Wells' Complaint against the United States (Case No. 3:13-cv-0693, Docket No. 1); the Stones' Complaint against the United States (Case No. 3:13-cv-0756, Docket No. 1); and the Overs' Complaint against the United States (Case No. 3:13-cv-0757, Docket No. 1).

[8] There appears to be confusion as to which Decedent actually picked up the Generator. Wells and the Watsons both plead that James F. Walls, II, picked up the Generator. However, in their Response to Denyo's Motion to Dismiss, the Watsons submit that decedent Jonathan Over picked up the Generator from Sunbelt, citing the deposition testimony of David Mitchell (Docket No. 81, Ex. 1). For purposes of this Memorandum, the court will draw this background fact from the pleadings.

plaintiffs allege that the Generator was manufactured by Multiquip or, in the alternative, by Denyo.[9]  The plaintiffs allege that, when Wall picked up the Generator, Sunbelt failed to provide him with an operator's manual related to the Generator or instructions on the safe operation and dangers of the Generator.  The plaintiffs further allege that the Generator was either designed with a defect or not properly maintained, because it failed to incorporate an emission control strategy and, therefore, emitted an excessive amount of carbon monoxide.

After midnight on September 18, 2011, the Decedents returned to the camper where they slept while attending the event.  The camper was parked in a designated area at the Clarksville Speedway.  The Generator was positioned near the camper and was powered on for the purpose of providing electricity for the camper.  The Decedents were discovered dead shortly before noon on September 18, 2011.  They died in the early morning of September 18, 2011, as a direct result of carbon monoxide poisoning due to the emission of carbon monoxide from the Generator.[10]

## III.   The Defendants

### A.  Sunbelt

Sunbelt Rentals is a North Carolina corporation that does business in Tennessee.  The plaintiffs allege that Sunbelt owned and operated multiple equipment rental locations in

---

[9] The plaintiffs base their allegation that Denyo manufactured the Generator on the allegations of comparative fault by Sunbelt and Multiquip in their respective responsive pleadings.  (*See* Docket No. 31 (Multiquip); Docket No. 32 (Sunbelt).)

[10] Although irrelevant to the instant motion, the plaintiffs allege that, had there been a functioning carbon monoxide detector in the camper, it would have sounded before the Decedents were incapacitated and their deaths would have been prevented.

Tennessee, including an equipment rental store located at Wilma Rudolph Boulevard in Clarksville, Tennessee.

## B. Multiquip

Multiquip is a California corporation that distributes, manufactures, and sells equipment, including gasoline-powered portable generators. Multiquip manufactures and distributes its own brand of equipment and also distributes other brands, including Denyo's products. Multiquip's headquarters are located in Carson, California.

## C. Denyo

Denyo is one of Japan's leading manufacturers of engine-driven generators. (Mizuno Aff. ¶ 3.) Its principal place of business is located in Tokyo, Japan. (*Id.* ¶ 4.) Denyo directly sells its products domestically in Japan to "major general contractors, plant manufacturers, steel companies, governmental offices," and others.[11] (*Id.* ¶ 5.)

### 1. The Distributorship Agreement

On January 1, 1998, Denyo entered into a Distributorship Agreement (the "Agreement") with Itochu and Multiquip. (Mizuno Aff., Ex. A.) Denyo is identified in the Agreement as the Manufacturer; Itochu is the Exporter, and Multiquip is the Distributor. (*Id.*) The original Agreement was set to run for a term of five years, but the parties amended the Agreement in 2000 to extend the term to eleven years. (*Id.*) Pursuant to the Agreement, Denyo appointed Multiquip as the exclusive distributor for its products within, among other territories, the United States. (*Id.*) The Agreement further sets forth that Denyo would sell its products, including the Generator at issue here, to Itochu, who in turn would sell them to Multiquip for distribution in

---

[11] The plaintiffs do not appear to dispute the facts submitted by Denyo, as set forth in the Mizuno Affidavit.

the United States.  (*Id.*)  During the term of the Agreement, the Agreement prohibited Denyo and Itochu from selling, distributing, or manufacturing the products subject to the Agreement in the United States or from appointing another party to do so.  (*Id.*)

The Agreement further permits Multiquip to use its name or mark on any of the products manufactured by Denyo and sold to Multiquip.  The Agreement also expressly notes that the relationship established between Denyo, Multiquip, and Itochu "shall be solely that of seller and buyer."  (*Id.* at 3.)  Additionally, the Agreement sets forth yearly target increases in purchase volumes for transactions among Denyo, Itochu, and Multiquip, and terms as to promotions of Denyo-manufactured products within Multiquip's territory.  (*Id.* at 4.)   In particular, the Agreement states that, annually, Denyo will pay Multiquip a sum of money equal to a small percentage of the sales volume for the previous year as part of expenses for advertisements to be placed by Multiquip.  (*Id.*)  On a final note, the Agreement also requires Multiquip, upon request of a customer, to repair or replace the parts of Denyo-manufactured products and service all Denyo products in the territory.

2. <u>Organizational Structure of Denyo and Its Subsidiary</u>

The plaintiffs allege that Itochu owns Multiquip and also owns 20% of Denyo.[12]  The plaintiffs further submit that Denyo has a subsidiary corporation, Denyo Manufacturing Corporation ("DMC"), which operates a plant in Kentucky, where generators are assembled.

---

[12] The plaintiffs cite to the deposition of Torsten Erbel to support these assertions but fail to identify (nor include testimony regarding) Erbel's relationship to the companies about which he testifies.  (Docket No. 81, Ex. 4.)  The plaintiffs make similar omissions as to the identification of witnesses David Mitchell and Gilbert Bradley Crowe.  (*Id.*, Exs. 1, 3.)  The parties are on notice that, in future filings, they should not neglect identifications and context regarding the witnesses and testimonies upon which they rely when submitting evidence into the record.

Three officers or directors of Denyo are also officers or directors of DMC. Multiquip distributes products manufactured by both Denyo in Japan and DMC in Kentucky. All purchase transactions related to Denyo and DMC go through Itochu.

Denyo has an English-language website related to its products. In his affidavit, Mizuno submits that Denyo does not currently, nor has it ever, directly sold or distributed its products to any individual or entity in Tennessee. Additionally, Denyo has no offices in Tennessee and has never done business in Tennessee.

       3.   <u>The Generator</u>

According to exhibits submitted by the Watsons in Response to the pending motion, the Generator responsible for the deaths of the Decedents was manufactured by Denyo in Konan-City, Japan. (Docket No. 81, Ex. 2.) Multiquip received the Generator at its warehouse in California in June 2006, and sent the Generator to Sunbelt in Clarksville, Tennessee on or about April 25, 2007. (*Id.*)

       4.   <u>Denyo's Compliance with United States Regulations</u>

After receiving a request and instructions from Multiquip, Denyo modified a product manual and decal sticker that would be placed on its products to conform to United States regulations promulgated by the Consumer Safety Product Commission ("CSPC") and the Occupational Safety and Health Administration ("OSHA"). (Docket No. 81, Ex. 4.)

**IV.**   <u>**The Relevant Actions**</u>

    **A. Wells**

On September 14, 2012, Wells filed an action against Sunbelt in the Circuit Court for Montgomery County, Tennessee at Clarksville. (Docket No. 1, Ex. 2.) On February 1, 2013, Wells filed a First Amended Complaint in the same court, adding Multiquip as a defendant.

Multiquip removed the action to this court on March 6, 2013. Wells sought leave to file a Second Amended Complaint on June 25, 2013 to add Denyo as a defendant, which the court granted on June 26, 2013. (Docket Nos. 18-19, 26, 27-29.) Wells' Second Amended Complaint, filed on June 26, 2013, alleges the following claims: (1) common law negligence of Sunbelt; (2) breach of contract by Sunbelt; (3) breach of warranty by Sunbelt; (4) common law negligence of Multiquip; (5) common law negligence of Denyo; and (6) the strict liability of Denyo. Wells seeks compensatory and punitive damages, as well as other monetary relief.

**B. The Watsons**

On September 11, 2012, the Watsons filed a Complaint in the Circuit Court of Montgomery County, Tennessee at Clarksville against Sunbelt. (Case No. 3:13-cv-0195, Docket No. 1, Ex. 2.) On January 30, 2013, after Sunbelt pleaded the comparative fault of Multiquip in its Answer, the Watsons amended their pleadings to add Multiquip as a defendant. (Case No. 3:13-cv-0195, Docket No. 1, Ex. 1.) Multiquip removed the action to this court on March 6, 2013. (*Id.*, Docket No. 1.) On June 3, 2013, the Watsons requested leave to amend their pleading to add Denyo as a defendant, which the court granted on June 21, 2013. (*Id.*, Docket Nos. 27, 31.) The Watsons' Third Amended Complaint alleges the following claims: (1) common law negligence of Sunbelt; (2) common law negligence of Multiquip; (3) the strict liability of Multiquip; (4) common law negligence of Denyo; and (5) the strict liability of Denyo. The Watsons seek compensatory and punitive damages, as well as other monetary relief.

## ANALYSIS

### I. Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiffs have the burden of setting forth specific facts in support of the court's exercise of personal jurisdiction over the

moving defendants. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiffs cannot rely solely on the allegations pleaded in their respective complaints. *Id.*

Here, the parties have conducted limited discovery relevant to the issue of personal jurisdiction and no party has requested an evidentiary hearing; therefore, it is entirely appropriate for the court to decide the jurisdictional issue based on the evidence presented. *Theunissen*, 935 F.2d at 1458. To defeat the motion, the plaintiffs need only make a *prima facie* showing of jurisdiction. *Id.*; *see Schneider v. Hardesty*, 669 F.3d 693, 698 n.7 (6th Cir. 2012) (noting that, in cases where limited discovery has been performed and no evidentiary hearing has been held, the Sixth Circuit generally applies the *prima facie* standard); *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 476-78 (6th Cir. 2003). In examining whether the party asserting jurisdiction has made this *prima facie* showing, the court is to construe the facts presented in the light most favorable to that party, and the court does not weigh or consider the conflicting facts presented by the other side. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *see also Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360-61 (6th Cir. 2008) (referring to the plaintiff's burden in this context as "relatively slight"). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir. 1997) (internal citations omitted).

Here, the issue of whether this court may exercise personal jurisdiction over the defendants depends on the specific limitations of Tennessee's long-arm statute and the constitutional principles of due process. *Bridgeport Music*, 327 F.3d at 477. Tennessee's long-arm statute has been consistently construed to extend to the limits of federal due process, and, therefore, the two inquiries are merged, and the court here need only determine whether

12

exercising personal jurisdiction over the defendants is consistent with federal due process requirements.[13] *Id.*

In order for due process to permit the exercise of personal jurisdiction over a non-resident defendant, such as Denyo, the defendant must have "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has identified two forms of jurisdiction: general and specific. A demonstration of the contacts necessary for either basis is sufficient to establish personal jurisdiction. *Id.* at 417-18.

A court may exercise general jurisdiction over a non-resident defendant when his contacts "are so continuous and systematic as to render [him] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks omitted). Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy," such as an "activity or an occurrence that takes place in

---

[13] Tennessee's long-arm statute, as codified at T.C.A. § 20-2-214, provides, in relevant part: (a) Persons who are non-residents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from: (1) The transaction of any business within the state; (2) Any tortious act or omission within this state; (3) The ownership or possession of any interest in property located within this state; (4) Entering into any contract of insurance, indemnity, or guaranty covering any Person, property, or risk located within this state at the time of contracting; (5) Entering into a contract for services to be rendered or for materials to be furnished in this state; (6) Any basis not inconsistent with the constitution of this state or of the United States; (7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.

the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S. Ct. at 2851 (internal quotation marks and citations omitted). Unlike general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*

Here, the plaintiffs appear to claim only specific jurisdiction over Denyo. The Sixth Circuit has established a three-part test for determining whether the exercise of specific jurisdiction is consistent with the principles of due process, called the *Mohasco* test. *See S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1969). Under this test, the exercise of such jurisdiction is proper if the court finds: "(1) purposeful availment 'of the privilege of acting in the forum state or causing a consequence in the forum state,' (2) a 'cause of action . . . aris[ing] from activities' in the state, and (3) a 'substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Schneider*, 669 F.3d at 701 (quoting *Mohasco*, 401 F.2d at 381). If any of the three requirements is not met, personal jurisdiction may not be invoked. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012). Finally, while a motion to dismiss for lack of specific personal jurisdiction may be maintained based on prongs two and three of the *Mohasco* test, purposeful availment is the *sine qua non*, or absolutely indispensable, element of personal jurisdiction, and, therefore, disputes about whether or not there is specific personal jurisdiction in a given case often rise or fall on the issue of purposeful availment. *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550-51 (6th Cir. 2007).

### A. Purposeful Availment

Under the first prong of the *Mohasco* test, the plaintiffs must establish that Denyo purposefully availed itself of the privilege of acting in Tennessee or causing a consequence in

Tennessee.  As a preliminary matter, it is well settled that the Sixth Circuit has adopted Justice

O'Connor's "stream of commerce plus" approach to purposeful availment, as articulated in

*Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102 (plurality opinion).[14]  *See*

*Bridgeport Music*, 327 F.3d at 479; *see also Smith v. Home Depot USA, Inc.*, 294 F. App'x 186,

189-90 (6th Cir. 2008).  "Purposeful availment is something akin to a deliberate undertaking to

do or cause an act or thing to be done in the forum state or conduct which can be properly

regarded as a prime generating cause of the effects resulting in the forum state, something more

than a purposeful availment of the forum state's opportunities."  *Bridgeport Music*, 327 F.3d at

478 (internal citations omitted).  "The emphasis in the purposeful availment inquiry is whether

the defendant has engaged in some overt actions connecting the defendant with the forum state."

*Id.* at 479 (citing *Dean*, 134 F.3d at 1274).  Requiring a plaintiff to demonstrate purposeful

availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of

random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third

person."  *Id.* at 478 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Here, the parties debate the current status of the "stream of commerce plus" doctrine, as

set forth by Justice O'Connor in *Asahi*.  The *Asahi* court, citing *World-Wide Volkswagen Corp.*

*v. Woodson*, "rejected the assertion that a *consumer's* unilateral act of bringing the defendant's

product into the forum state is a sufficient constitutional basis for personal jurisdiction over a

defendant" and concluded that "the placement of a product into the stream of commerce, without

_____

[14] In their Response to Denyo's motion, the Watsons argue that the court should apply a
"foreseeability" standard of purposeful availment, drawn from the dissenting opinion of Justice
Ginsburg in *J. McIntyre Machinery, Ltd. v. Nicastro*.  (Docket No. 81 at 10 (discussing 131 S.
Ct. 2780 (2011).)  Denyo strongly opposes the plaintiffs' argument.  Because the plaintiffs have
failed to cite to any binding or persuasive Sixth Circuit authority adopting the *J. McIntyre*
dissent's test in place of *Asahi*, the plaintiffs' argument is unpersuasive.

more, is not an act of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 109, 112 (discussing *World-Wide Volkswagen*, 444 U.S. 286 (1980)) (emphasis in original). The law in this area is complicated, and since *Asahi*, some lower courts have struggled with the "stream of commerce plus" doctrine. In their respective briefs related to the instant motion, the parties debate the applicability and significance of a recent Supreme Court opinion that analyzed the "stream of commerce plus" doctrine as it applied to a products liability claim against a foreign manufacturer whose products reached New Jersey through a United States distributor—facts that are similar to those underlying the plaintiffs' claims here.

   1. *J. McIntyre Machinery, Ltd. v. Nicastro*

  In 2011, the Supreme Court assessed the New Jersey Supreme Court's holding in a products liability case that, under *Asahi*, New Jersey courts could exercise jurisdiction over a foreign manufacturer that had contracted with a distributor in the United States to sell its products. *J. McIntyre Machinery, Ltd v. Nicastro*, 131 S. Ct. 2780, 2785 (2011). The state high court had held that, so long as a foreign manufacturer "knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states," it can be found to have "purposefully availed itself" of the forum of New Jersey. *Id.*

  Upon an appeal filed by the foreign manufacturer, Justice Kennedy wrote for a plurality of four justices and reversed the New Jersey Supreme Court. In oral argument before the Supreme Court, the foreign manufacturer's counsel had stressed three primary facts in opposition to New Jersey's assertion of jurisdiction over J. McIntyre, the foreign manufacturer:

> First, an independent company agreed to sell J. McIntyre's machines in the United States. J. McIntyre itself did not sell its machines to buyers in this country

beyond the U.S. distributor, and there is no allegation that the distributor was under J. McIntyre's control.

Second, J. McIntyre officials attended annual conventions for the scrap recycling industry to advertise J. McIntyre's machines alongside the distributor. The conventions took place in various States, but never in New Jersey.

Third, no more than four machines . . . including the machine that caused the injuries that are the basis for this suit, ended up in New Jersey.

*Id.* at 2786. According to Justice Kennedy, the New Jersey Supreme Court had considered additional facts set forth by the plaintiff, including that J. McIntyre "held both United States and European patents, . . . the U.S. distributor structured its advertising and sales efforts in accordance with J. McIntyre's direction and guidance whenever possible, and that at least some of the machines were sold on consignment to the distributor." *Id.* (internal citations omitted).

Upon these facts, Justice Kennedy concluded that the evidence was insufficient to confer specific jurisdiction over the foreign manufacturer. He further emphasized that facts which "reveal an intent to serve the United States market" are insufficient to show that a foreign party has "purposefully availed itself" of a specific state's market. *Id.* Accordingly, a party asserting jurisdiction over a foreign party must establish that the foreign party engaged in conduct *purposefully directed at the forum. Id.* at 2790.

In his concurrence to the *J. McIntyre* plurality, Justice Breyer, joined by Justice Alito, declined to adopt Justice Kennedy's bright-line rule as it applies to foreign manufacturers whose products reach specific states through nationwide distribution agreements, but he concluded that, under *Asahi*, the facts asserted by the plaintiff were insufficient to establish sufficient contacts between the British firm and the State of New Jersey. Justice Breyer explained that, under Supreme Court precedents including *Asahi* and *World-Wide Volkswagen*, a "single isolated sale, even if accompanied by the kind of sales effort [indicated by J. McIntyre here] . . . is

17

insufficient" to establish "something more" than simply placing a product into the stream of commerce. *Id.* at 2792. He wrote:

> Here, the relevant facts found by the New Jersey Supreme Court show no 'regular . . . flow' or 'regular course' of sales in New Jersey; and there is no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else. Mr. Nicastro, who here bears the burden of proving jurisdiction, has shown no specific effort by the British Manufacturer to sell in New Jersey. He has introduced no list of potential New Jersey customers who might, for example, have regularly attended trade shows. And he has not otherwise shown that the British Manufacturer 'purposefully availed itself of the privilege of conducting activities within New Jersey,' or that it delivered its goods in the stream of commerce 'with the expectation that they will be purchased' by New Jersey users.

*Id.* at 2793.

Here, Wells and the Watsons argue that the court should look to Justice Breyer's concurrence as the law of the land, and Denyo argues that, according to Justice Kennedy's plurality opinion, the court plainly lacks personal jurisdiction over Denyo.[15] The court concludes that it need not favor either Justice's analysis; it is clear that, pursuant to both Supreme Court and Sixth Circuit authority, *Asahi* remains undisturbed as the law of the land. Moreover, under *Asahi* and both Justice Breyer's and Justice Kennedy's analyses of the "stream of commerce plus" doctrine, the plaintiffs have failed to set forth a *prima facie* case of personal jurisdiction over Denyo because they have not shown that Denyo purposefully availed itself of the privilege of acting in Tennessee.

## B. Application

---

[15] The plaintiffs point out that the Supreme Court of Tennessee recently issued a lengthy opinion examining *J. McIntyre* and holding that, pursuant to the rule of *Marks v. United States*, 430 U.S. 188 (1977), Justice Kennedy's plurality opinion is not the controlling opinion of *J. McIntyre*—instead, Justice Breyer's opinion governs as the concurrence in the judgment on the narrowest grounds. *State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 756 (Tenn. 2013).

Here, Wells and the Watsons list several facts related to Denyo, DMC, Multiquip, and Itochu, but only submit four facts relevant to the inquiry of whether *Denyo*—the defendant here—has purposefully availed itself of acting in Tennessee. The plaintiffs submit that (1) Denyo shipped the Generator to the United States with full knowledge that it would enter the stream of commerce; (2) per Multiquip's request, Denyo modified a decal to be placed on the Generator and a product manual in an effort to comply with United States regulations; (3) Denyo pays Multiquip pursuant to the Agreement to advertise and service Denyo-manufactured products in the United States; and (4) Denyo has an English-language website that promotes its products.[16]

The plaintiffs cite *Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528 (6th Cir. 1993), in support of their argument that Denyo purposefully availed itself of this forum. In *Tobin*, a plaintiff appealed the dismissal for lack of personal jurisdiction of a Dutch pharmaceutical company.[17] 993 F.2d at 543. The company had claimed that it had done nothing to purposefully

---

[16] The plaintiffs further submit that (1) Denyo's subsidiary, DMC, is located in Kentucky; (2) Denyo's personnel have occasionally visited the DMC plant in Kentucky; (3) three officers and directors of Denyo are also officers or directors of DMC; (4) DMC's website contains a link to Multiquip's website; (5) Multiquip's website promotes Denyo's products; (6) Multiquip approves the design of products to be manufactured by Denyo; (7) as the exclusive distributor for Denyo in the United States, Multiquip sells several hundreds of millions of dollars of Denyo-manufactured products each year: (8) Itochu, which has an office in New York, owns Multiquip and has a 20% stake in Denyo; and (9) Multiquip's purchases of Denyo's products go through Itochu. Because the plaintiffs have not alleged that Denyo is an alter ego for Multiquip, DMC, or Itochu, the plaintiffs' additional facts as to these companies are irrelevant in an analysis of *Denyo's* contacts with Tennessee. Moreover, the plaintiffs' assertion that the court has personal jurisdiction over Denyo because "Multiquip and Denyo are engaged in a 'common enterprise'" is unsupported by Sixth Circuit law or any facts in the record.

[17] The plaintiffs also cite to *Homedics v. Yejen Indus., Ltd.*, No. 05-cv-70102, 2006 WL 2594918 (E.D. Mich. Sept. 8, 2006), but their reliance on *Homedics* is misplaced. In *Homedics*,

avail itself of Kentucky, the forum state, because its United States distributor had complete control of its product and the product's package insert, including the sole responsibility to comply with all United States Food and Drug Administration ("FDA") requirements. *Id.* However, the Sixth Circuit noted that the licensing agreement between the pharmaceutical company and its distributor included a provision requiring the distributor to receive consent of the pharmaceutical company before exchanging information about the product with the FDA. Because the company maintained control over an "essential element" of its product even after the product was passed to the distributor, the Sixth Circuit concluded that the non-resident company had contact that rose to the level of purposeful availment. *Id.* at 244-45.

The plaintiffs appear to contend that, because the Agreement assigns responsibilities to Multiquip as to service and advertisement of Denyo-manufactured products, and because Denyo modified its manual and decal to comply with United States regulations, Denyo maintains "control" over its products in a manner that creates "something more" than just awareness of its products entering the stream of commerce. The court disagrees. Indeed, the facts appear to demonstrate that Denyo structured its distribution agreement with Multiquip so that it could entirely cut ties from its products as they entered the stream of commerce—including by requiring Multiquip to perform service on its products as well as be responsible for all

---

the court possessed subject matter jurisdiction because the plaintiff's claim arose under federal law. Accordingly, in assessing the defendant's motion to dismiss for lack of personal jurisdiction, the court applied Fed. R. Civ. P. 4(k)(2), and the plaintiff was required to establish only that the defendant had purposefully availed itself of acting in the *United States as a whole*. 2006 WL 2594918, at *3. That distinction is critical here, for the reasons discussed in Justice Kennedy's plurality in *J. McIntyre*. Here, the plaintiffs must make a *prima facie* showing that Denyo purposefully availed itself of acting in Tennessee.

advertising and marketing in its designated territory.[18]  (Mizuno Aff., Ex. A.)  Moreover, unlike in *Tobin*, the Agreement among Multiquip, Itochu, and Denyo contains no provision that grants Denyo control over an essential element of its products once they are exported and sold to Multiquip.

Under similar circumstances, the Sixth Circuit has held that a foreign manufacturer's adherence to U.S. design standards, possession of U.S. patents, and its agreement with a nationwide distributor in the United States were insufficient to confer a court with specific personal jurisdiction.  *Smith*, 294 F. App'x at 190 (emphasizing that "[t]he permission to sell its products in the wide expanse of North and South America is a far cry from a requirement to sell in Tennessee.")  In a products liability suit against a German manufacturer of ladders sold through a nationwide distributor at stores in the United States, the *Smith* court wrote, "[The manufacturer] surely placed the product in the stream of commerce, but there is nothing more here to show that [the manufacturer] purposefully directed its ladders toward the forum state of Tennessee."  *Id.*

The facts are no different here.  The contacts between Denyo and Tennessee, as alleged by the plaintiffs, are "too random, fortuitous, and attenuated for a finding of purposeful availment."  *Bridgeport Music*, 327 F.3d at 484.  Accordingly, the plaintiffs have not established

---

[18] The court recognizes that, from one perspective, it may appear that Denyo structured its Agreement with Multiquip in a manner that would preclude a finding of specific jurisdiction, at least in the state of Tennessee.  Under settled law in this Circuit, however, due process does not permit a finding of specific jurisdiction over a foreign manufacturer that sells its products first to a foreign exporter and then to a United States distributor, without any evidence of additional contact with the forum or continued control over its products after they enter the stream of commerce.  Accordingly, Denyo resides outside of the reach of the long-arm statute of Tennessee.

that Denyo purposefully directed its products toward Tennessee, and the plaintiffs have failed to demonstrate purposeful availment—the indispensable element of personal jurisdiction. Accordingly, the plaintiffs have failed to set forth a *prima facie* showing of personal jurisdiction over Denyo and the plaintiffs' claims against Denyo will be dismissed.[19]

### CONCLUSION

For the reasons stated herein, Denyo's motion to dismiss will be granted.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

---

[19] On a final note, the plaintiffs have urged the court to deny Denyo's motion because, if it grants the motion, the plaintiffs will have no remedy against Denyo, and their substantial interest in holding Denyo responsible will be harmed. Although the court is sympathetic to the tragic losses suffered by the plaintiffs, due process requires that a defendant possess certain minimum contacts with Tennessee such that the maintenance of the suit does not offend the "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (internal citations omitted). Upon close review of the facts and applicable law, the court concludes that dismissal is appropriate here.